May it please the Court, I would like to reserve two minutes for rebuttal. Okay, the clock counts down, so we'll try to help you. Thank you, Your Honor. Mr. Ward exercised his due process right to speak on his own behalf in his parole revocation proceedings. He accepted responsibility for his violations by admitting they possessed a firearm and presenting evidence in mitigation of that possession. He prayed for leniency. Mr. Ward fully vindicated his right to speak on his behalf at those hearings, but the vindication of that right exacted a price, an intolerable price. Within four months of that hearing, the United States government indicted Mr. Ward in part on the admissions he made at that hearing and then subsequently convicted him in large part on those admissions. Mr. Ward, rate your time. And they convicted him felon in possession? Yes, Your Honor. Okay. Thank you. Felon in possession is usually – convicting on felon in possession is usually falling off a log. That's not very hard to convict. Well, in this case, Your Honor, the weapon was not found on Mr. Ward's person. I understand it was found in the residence, yeah. Yes, in the residence of his parents in the bedroom closet where they were staying. But he was living with them, right? He was, Your Honor. Counsel, what's the difference between this case and a case where a defendant on trial chooses to take the stand and testify on his own behalf and gets convicted? Your Honor, the primary difference is that the fairness principle in that case applies so that if an individual takes the stand in his own defense, he cannot use the Fifth Amendment privilege as both a sword and a shield. The government or the prosecutor should have the opportunity to cross-examine him, and that was obviously recognized in the McAuliffe case. Well, isn't that pretty much what happened here? You just told me he voluntarily made the decision to testify at the parole revocation hearing. I don't see any evidence of any compulsion. It was a choice that he made to do that. Am I wrong? Compulsion is the key question there. In this Court's decision in Lambright v. Ryan, it recognized that Simmons is slightly different from the penalty cases in which the Court often talked about the imposition of a direct sanction or an indirect sanction on exercising a constitutional right. In Lambright, the Court recognized that forcing an individual to make this difficult choice is a level of coercion that's recognized by the Fifth Amendment. Well, who forced him to make this difficult choice? I don't see any evidence that somebody forced him. It seems that he was confronting two options and he chose to testify. Who was forcing him to do this? Your Honor, when the parole, no one forced him to speak on his own behalf. And was there any penalty to be attached if he had remained silent? The penalty would be that he would be waiving his right to a full and fair hearing on revocation. Well, that's a kind of a stretch to call something like that a penalty, isn't it? Well, in a case like this where the parole board heard evidence that he had, that a firearm was found in his closet and that he had made some incriminating statements at the time of his arrest, it was all but certain that he was going to be revoked. And he was facing 10 years. That's a substantial amount of time upon revocation. The only real chance he had was to plead for mercy, which is a due process right recognized by the Supreme Court in Morrissey. I would like to focus most of my argument today, Your Honors, on the exercise of supervisory authority. Of course, I'll answer questions that pertain to the constitutional issue. Well, you might as well tell us how you get around the Ryan case. I'm interested to hear you articulate why you think Knight, you know, interfaces with that. Thank you, Your Honor. I'm not sure if I heard the last part of the Court's question, but did it reference Knight's? Yes. Okay. In the context of the supervisory authority, Knight's has a role in our argument, but it's not as great as it is in the Fifth Amendment claim. But Knight's, as well as subsequent Supreme Court jurisprudence, undermined a parolee's Fourth Amendment rights, recognized that they were diminished, and that shifted the balance of power. And that shift is recognized as a relevant factor in formulating procedural rules. How do we get around Ryan? Well, Ryan did not say that the Court has no supervisory power. In fact, in the closed remarks in Ryan, the Court suggested that, but for jurisdictional concerns, it would have adopted the rule. It recognized the benefits of the rule that had been adopted by the Melson Court, as well as the California Supreme Court, and cited specifically to the California Supreme Court's analysis in Coleman, which is a wonderful analysis. So I believe that the Ryan Court, 36 years ago, did not adopt it because of significant differences that now are shown in this case. One, this Court has direct jurisdiction. This case arose from a federal district court proceeding. This Court obviously has jurisdiction, direct jurisdiction, over all federal district courts in the circuit, whereas Ryan arose on a federal habeas corpus. Counsel, to adopt a supervisory rule in this case would require us to overrule Ryan. Am I right about that? No, Your Honor. I do not believe so. Ryan only ruled that there was not a violation of the Fifth Amendment based on the fact scenario that exists very similar to this case. Exercising this Court's supervisory authority is not dependent on the finding of a violation of constitutional rights. My next question is, if we were to adopt a supervisory rule, how in the world would it apply to your client in this case? Would it not, per force, project only into the future with respect to other cases? Your Honor, we would ask this Court to do, as other courts have done, as in Melson, as well as Coleman, which applied the rule that was adopted to the instant case, but then otherwise apply it to prospective cases. I believe that's consistent with ---- I'm quoting Hastings for the moment in terms of the basic purposes of supervisory powers, quote, to implement a remedy for violation of recognized rights. I'm not sure that we've got violation of recognized rights if Ryan remains on the books. To preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the, it says jury, but the court. I'm not sure how that cuts. And finally, as a remedy designed to deter future illegal conduct. How can you fit this case into those purposes served by exercise of the supervisory power? Two points, Your Honor. Okay. First, I would focus on the second purpose. Again, all these purposes are guided by considerations of justice. That's clear in Hastings. And the second purpose, which is to preserve judicial integrity by assuring, in this case, assuring that juries are not presented with evidence tainted by an intolerable choice. Now, this second reason that this fits nicely into the analysis, again, the broader consideration of justice, is that as this court on bank decided in the W.R. Grace case that these three purposes are not necessarily limited to the confines of what the Supreme Court identified. Coming back to the point about why it is now time to adopt the rule that this court considered 36 years ago. First, the jurisdictional issues no longer exist. Second, the developments in Fourth Amendment jurisprudence have created a shift in the balance of rights. And third, Simmons is still good law. At the time that Ryan came down, there was question in the Supreme Court and all the circuits whether Simmons was going to survive Magaltha. It had, but Magaltha expressed some limitations on Simmons. But over the past 36 years, courts throughout this country, including this court, relatively recently, have extended Simmons, recognized its validity in cases like Biddeker v. Woodford and Lambright v. Ryan. Can you tell me what exactly this supervisory rule would say? What would it be precisely, in your opinion? A defendant's statements made while asserting his due process right to speak on his own behalf at a revocation hearing may not be used in the government's case in chief at any subsequent trial on charges arising from those violations. This rule would be guided by the spirit, if not the letter, of Simmons. It's easy to apply. It does not present a windfall to either side. It's unlike in Magaltha, where if the individual wanted to testify and he said he could then assert his right to remain silent later, that hurt the government. They were not able, and it also hurt the fact finder in that case. Here we have different fact finders. We have different parties. And at the trial, if Mr. Ward had chosen to testify and did so inconsistently, the government could impeach Mr. Ward. That's one of the differences between this rule and other rules, other rules which are rules of dismissal or complete exclusion, like a rule of exclusion under the Fourth Amendment exclusionary rule. This does not go to that extent. It's not a sanction on the government. It doesn't limit the parole board's authority. In fact, it encourages open disclosures, which is good for the parole board. And it doesn't prevent the government from relying on traditional investigative means to support a charge. Okay. We've taken you right to the end of your time. Let's hear from the government, but we will give you a chance to respond. Thank you, Your Honor. I'm sorry. May it please the Court. Serena Case Hargrove on behalf of the United States. So you think it's perfectly okay to be presented with the so-called Hobson's choice, and that spares the constitutional law, amounts of fairness, supervisory power concepts. I guess that's your position, right? Yes, Your Honor. Really, there are two sides of the coin here for a defendant. A defendant can choose to exercise his or her Fifth Amendment right not to incriminate himself, or a defendant can choose to exercise their due process right to testify on their own behalf. And the Supreme Court has made it clear that choice is acceptable. It has to be a choice. You can't compel it. It must be a choice. But if that is the choice posed to a defendant, that is acceptable. I read Simmons, Bitteker, and Lambright situations in which the defendant wasn't just faced with that two-sided coin. The defendant was faced with another right that was burdened. And so in order to maintain the Fifth Amendment right not to self-incriminate, the defendant in those cases would have had to give up additional constitutional rights. So in Simmons, that Fourth Amendment right to be free of unconstitutional searches and seizures. And Simmons really emphasized that's a very important right, and it's not important just for individual defendants. It's important to society, because that's how we vindicate every one of our rights, not to be subject to unconstitutional searches and seizures. Yes. I'm following your arguments, but I have to say there's a certain sort of, I don't know, parallel to the argument made that when the issue is supervised release revocation, and he may have legitimate things to say that might be used in mitigation, to have that be one proceeding, and then we've got a separate proceeding in which guilt or innocence, if he's charged with a crime, if he's charged with something beyond violation of supervised release, why is that a bad system where he would be able to have, just operate these two things independently? Your Honor, it's not necessarily a bad system. It's just not one that is compelled by the Constitution. And the Supreme Court made that very clear in Magaltha, where really we were dealing with a significantly more serious punishment than Mr. Ward was faced with here. That dealt with the death penalty, and the Court held that they didn't have to separate those, the guilt from the penalty proceeding. And if that's acceptable when the death penalty is at stake, it's hard to imagine how it couldn't be acceptable here when really he's asking for a lesser sentence. Yeah. Well, I'm also looking at the sentence here. You've got 157 months and change, 157 and a half, I guess. Was that a guideline, within the guideline sentence for felon in possession? Your Honor, I believe it was. My hatred of saying no. I'm not certain of that. I didn't go back and look it up, and I'm not sure I even could have figured it out on the record as it comes to us here. One of the things that I'm looking at here that I'm trying to figure out, this seems like a slightly long sentence for something that if he's telling the truth, and he says, well, he's got it locked in a closet, registered to somebody else, this is not felon in possession, he's driving around with a car with a loaded pistol under the seat. I don't want to say that it's an unreasonably long sentence, but it strikes me as a somewhat long sentence. Can you give me some sense as to what's going on here in the underlying sort of who is this person, why are we going after him for felon in possession in addition to parole revocation and so on? I can try, Your Honor. Yes, he has a very serious record. He had a number of felonies. This wasn't the – he was convicted at the State level, and he was on probation for assault with a deadly weapon, and he had other felonies in the past. Mr. Ackley will know more about the details. My understanding is there was some possible involvement with his – with domestic violence and issues surrounding that. But I may be wrong. I apologize, Your Honor. I was not the trial attorney here. But my understanding is that he had a significant record, and Judge Lodge took all of that into consideration with the sentence. But as you said, that's not the record here on this appeal. It's not directly at issue here, but I'm trying to just figure out what's going on. I appreciate that. Yes.  I'm sorry I can't be of more help there. Okay. So as long as – I mean, really, Mr. Ward faced precisely the dilemma that every single defendant faces in a case, which is do I testify and exercise my due process rights, or do I choose to remain silent? So if he stayed silent, the parole board never would have known about the facts that he spoke about. Isn't it in the best interest of the parole board to really encourage people to come up front in the context of these parole replication hearings and be open with them? It seems like this is counterintuitive if we support your position that he should stay silent. We're missing valuable information that could be effective or appropriate for the parole people to hear and know. Your Honor, it's interesting because there would be other ways of showing that that gun was registered to someone else or that someone had asked him to hold it for them. So actually, in this case, there are certainly circumstances in which it would require a defendant's testimony to show those things. But here, with these particular facts, Mr. Ward could have put others on the stand who could have established what he was saying, that someone had asked him. He could have put the person who allegedly asked him on the stand, and he chose not to do that. But I do appreciate there might be circumstances where someone would – the only evidence would be their own testimony. And, Your Honor, I think that was the situation largely in McAuliffe. Well, you know, I know that I sit as a district court judge on violations of supervised release a lot. And, you know, the whole concept of that is really to determine whether or not the alleged violator breached the trust of the court. And we encourage them to be candid with the court. And, you know, it's important that we get a true sense of what may have transpired to determine exactly what to do for purposes of supervised release dynamics. But if the person is going to stay silent, and we're encouraging them to stay silent, doesn't that undercut the purpose of what we want to accomplish when we deal with violations? Well, Your Honor, I think I would look at it from the other side of the coin for a moment, which is that if we encourage that but we give people immunity from – use immunity so that their testimony can't be used against them in their actual trial, then we start running afoul of the Supreme Court's mandate in Painter, which really emphasized the importance of including all admissible evidence, that there is a substantial societal interest in including truthful evidence, which this is, which his testimony under oath at the probation violation hearing is. So, yes, there is certainly an interest in having people come forward and be frank with the court and with their probation officers, absolutely. But that is balanced by this need, society's need for – Doesn't that tension support the argument that maybe we should invoke our supervisory powers in this type of situation? Your Honor, no, it doesn't. And the supervisory powers question, I think, is a very interesting one.  The Supreme Court has said that is not acceptable in Hastings. And the Ninth Circuit recognized that in Gatto and explained that to the extent that Gonsalves – to a large extent, Gonsalves, which is a vacated Ninth Circuit decision, relied on a broad interpretation of supervisory powers based on judicial integrity. Is there any case – or what's the best case that you have to preclude us or to discourage us from exercising supervisory powers in this dynamic? Yes, Your Honor. Yes. Gatto. That's the case, Your Honor. Absolutely Gatto, yes. At 1046, the Court explained that courts may not exercise any supervisory power absent a clear basis in fact and law for doing so, that proper regard for judicial integrity is a matter of the court's discretion. And the court's discretion is to justify a chancellor's foot veto over co-equal branches of government. And here we've got a situation where three circuits have held that it is in the federal context that it is perfectly acceptable to make defendants make this decision. It's a difficult choice, but it is the choice that's posed. Here's a different question. I appreciate the argument and am inclined to agree with the argument that what happened here was constitutionally permissible and that there's nothing under supervisory powers as we now exercise to require that use immunity be given. My question is somewhat different. What if a district judge presented with supervised release violation wants to grant use immunity? Is there anything to prevent that district judge from doing it? Because the judge, kind of following along what Judge Locke's talking, he really wants to hear what happened and he doesn't want to sort of put too much pressure on the choice. He says, listen, tell me about it and we won't use it later. I mean, what proof they have or don't have with your criminal violation they have, but they can't use your testimony against them. Could a district judge do that? That's not this case, I understand. I appreciate that, yes. I believe not, Your Honor, because that would tread on the executive power. The prosecutor could decide to grant use immunity and does that regularly with witnesses. But for the court to do that, I think that's precisely where Gatto is getting, that even if the court could, it would be a terrible idea, and that's what Gatto is warning about in Hastings, that the court doesn't want to tread on another branch of government's authority. And it should be extremely reluctant to do that. My sense is that we don't have sui sponte power to do that, but, you know, I may not be correct about that. I've never seen that. We've never done it. And I guess I'm the district court judge here. I can just contribute to that effect. But I'm not so sure that we cannot do it. I suspect we cannot, though. Yeah. Interesting. Okay. Thank you very much. Thank you, Your Honor. Let's put two minutes on the clock. Thank you, Your Honor. A district court absolutely would not err in exercising a supervisory authority based on the hypothetical that Judge Fletcher put forward. And the reason we can say that is because that's what the district court did in Bideker v. Woodford, very similar. It exercised its inherent supervisory authority, which it can raise sui sponte. And it precluded the use of statements. That was in Lambright. But in Bideker, it precluded the use of disclosed attorney-client privileges at any subsequent resentencing pursuant to a supervisory authority. And this Court in Bideker on appeal said that, indeed, it would have been an abuse of discretion for the district court not to have granted that immunity. Yeah, but Bideker was basically, in order to protect the attorney-client privilege, consistent with allowing the habeas to go forward. I mean, there was a right, there was a privilege that operated somewhat differently. I know Bideker. I understand, Your Honor. The case of Bideker and Lambright, though, and this case and Simmons are different from the cases at the government sites like Gato. In Gato, it involved a discovery, a disclosure issue, where the court said that I'm not going to allow the government to present evidence because it has untimely disclosure. This case, as well as the others I just referenced, involved an undeniable, intolerable tension at a minimum between the exercise of two constitutional rights, the right to remain silent at a subsequent criminal proceeding and the right, the due process right, to speak on one's own behalf, which is not supplanted in any way by the ability to call witnesses, as the government suggests. No, that's an independent right to appeal to the court. As this Court and Federal district courts throughout the country are aware, there's something about acceptance of responsibility. There's something about an allocution. So that even if he chose to admit to the violations, which was his due process right, which he would have waived if he remained silent, but he also had the right to ask for leniency. Okay. Thank you. Thank you very much. Thank you. Thank both sides for your arguments. The case of United States v. Ward now submitted for decision.
judges: Block, Trott, Fletcher